IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES CHIRDO,** | : | CIVIL ACTION |
|     **Plaintiff** | : | |
| | : | |
|     v. | : | NO. 06-5523 |
| | : | |
| **MINERALS TECHNOLOGIES,** | : | |
| **INC. and SPECIALTY MINERALS,** | : | |
| **INC.,** | : | |
|     **Defendants** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                   **August 28, 2008**

      James Chirdo filed this age discrimination suit against his former employer, Mineral Technologies (and its division, Specialty Minerals), alleging that his April 2005 termination based on unsatisfactory employment evaluations was a pretext for age discrimination.  Age 55 when terminated, Chirdo was also the oldest member of his project team.  He had worked for Specialty Minerals for 23 years and earned a salary of approximately $126,000.  He was replaced by a substantially younger employee.  Fact discovery closed on January 15, 2008, per the latest scheduling order.  Defendants moved for summary judgment on February 15, 2008.  After a thorough review of the fact-intensive record in this case, I have determined that summary judgment is inappropriate, and I will therefore deny defendants' motion.

**I.     BACKGROUND**[1]

As I write for the parties, who are familiar with the facts of the case, I will abbreviate my discussion of the factual background. James Chirdo was hired on June 18, 1981 as a Data Processing Manager. He was 31 years old. He was terminated after 23 ½ years of employment, at age 55, and replaced by a substantially younger employee (Kate Bath, 43, and eventually new hire Mr. Green, 32). Defendants concede plaintiff has established a prima facie case of age discrimination for summary judgment purposes, but cite Mr. Chirdo's poor performance reviews as a non-discriminatory reason for his termination. The focus of the dispute is therefore the strength of Mr. Chirdo's pretext evidence.

**II.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for

---

[1] I have viewed the facts in the light most favorable to the plaintiff, as the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. at 322.  Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  Id. at 252.

    If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.  Big Apple BMW, Inc. v. BMW of North America, Inc.,

974 F.2d 1358, 1363 (3d Cir. 1992).

**III.   DISCUSSION**

The Complaint states an age discrimination claim under both the ADA and the Pennsylvania Human Relations Act ("PHRA").  Age discrimination claims are assessed under the three-step McDonnell Douglas burden-shifting analysis.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Defendants concede, for summary judgment purposes, that plaintiff has met his burden as to the first step: establishing a prima facie case of unlawful discharge because of age.  See McDonnell Douglas, 411 U.S. at 802; Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997); see also Defs.' Br. 16.  Under McDonnel Douglas, the burden of production then shifts to defendants to posit a legitimate, non-discriminatory reason for termination.  See Keller, 130 F.3d at 1108.  The burden then returns to Mr. Chirdo to submit evidence from which "a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Id.

A.   Mr. Chirdo's Pretext Evidence

Plaintiff cites his consistent, 23-year employment record with MTI as proof that he could not have been fired for poor performance.  He has evinced documentary evidence showing a long history of positive performance reviews as well as work logs and email that he claims will contradict defendants' assertion that his work lagged prior to his

termination. Mr. Chirdo has also furnished evidence of the MTI "progressive disciplinary policy," which he alleges his bosses, Anthony DePalma (Chief Information Officer for MTI) and Clayton Owens, did not follow in the period before Mr. Chirdo's termination. Specifically, Chirdo claims he was given no notice that his work needed improvement, until his December 23, 2004 oral performance review.[2] Mr. Chirdo plans to introduce statements[3] that certain MTI executives made concerning a policy or pattern of replacing older employees with younger ones–evidence of age bias at MTI. Chirdo has also retained a statistics expert, Dr. Andrulis, to testify that terminated employees were significantly older than average workforce age, and that only significantly younger employees participated in the defendants' leadership program. Additionally, plaintiff has produced statements from multiple MTI employees complimenting the technical assistance they received from Mr. Chirdo after the Oracle system went live. These statements undermine defendants' suggestion that his work quality was poor.

B.    MTI's Evidence

Primarily through the testimony of Chirdo's manager, Mr. Owens, and his co-

---

[2]Plaintiff contends that Owens indicated the two would begin to meet regularly to review Chirdo's progress after Chirdo's negative performance review in December 2004. This did not happen, and instead Chirdo sent his own weekly work summaries to Owens (to which Owens did not respond). Owens' testimony is contradictory on whether he ever received the work summaries. In January 2005, when asked how he planned to help Chirdo make improvements; Owens responded, "I don't plan on anything other than this review." Although he was given 60 days to improve, Owens testified that he decided to terminate Chirdo as of February 7, 2005, when he was unhappy with a work log submitted by Chirdo.

[3]Obviously, the parties continue to debate the admissibility of these statements.

worker, Kate Bath, MTI paints a story of Chirdo's more gradual decline in work performance, beginning with joining the "Oracle Team" under DePalma in 2002. The team was selected to implement the Enterprise Resource Planning system from Oracle, a replacement operating system for the older one that Chirdo had worked with in years past. MTI contends that co-workers and supervisors observed Chirdo struggling to make the transition to a new system. For instance, Mr. Owens who became Chirdo's manager in April 2004, and DePalma were copied on many user emails, suggesting that Chirdo was not adequately handling user issues. Chirdo's co-worker on the project, Kate Bath, testifies that she handled most of the complex problems, while Chirdo socialized.[4]

DePalma and Owens met with Chirdo in December 2004 and gave him a "2" out of "5" ("needs improvement") performance review. He was given 60 days to improve. While Chirdo claims he sent numerous logs and that Owens is lying about not receiving them, Owens states that he only received a February 7, 2005 log of the previous month's work–confirming inadequate performance. Bath and Owens describe Chirdo's failure to improve, and the persistence of his negative attitude and excessive socialization.

On the age bias issue, MTI argues that none of the other terminated employees were "true comparators" under the ADEA, making their testimony irrelevant. Moorehouse v. Boeing Co., 501 F. Supp. 390, 391-94 (E.D. Pa. 1980). The "stray

---

[4] It appears from Chirdo's material facts in his opposition to summary judgment that he would show that he and Bath did not have the same responsibilities, and defendants' effort to equate their work assignments is misleading. (See Pl.'s Mat. Facts ¶ 15.)

remarks" by then-CEO Paul Saueracker, when he allegedly told Chirdo that "younger employees" have "new ideas," have no legal impact on Mr. Chirdo's termination, according to defendants.  Zippittelli v. J.C. Penny Co., 05-2214, 2007 U.S. Dist. Lexis 14243 (E.D. Pa. Feb. 28, 2007).  Defendants have also hired an expert, Dr. Bernard Siskin, whose report questions the data compilation and accuracy of Dr. Andrulis' analysis of age bias at MTI.

The fact that problems may have started with the transition to the Oracle system lends convincing support to defendants' argument, but Mr. Chirdo has also produced significant deposition testimony from other employees attesting that he provided "timely, good, efficient and proficient service."  (See Pl.'s Mat. Facts ¶ 24-25.)  Contrary to defendants' position, a jury might not consider irrelevant the "stray statements" from an MTI executive to Chirdo about the benefits of younger employees.[5]

## IV.   CONCLUSION

Both sides have parsed the voluminous record in their favor.  In the end, Mr. Chirdo has at least raised an issue of fact on the question of liability, as to whether his "poor performance" was pretext for a discriminatory termination based on age.   I must therefore deny summary judgment and allow the parties to try the case before a jury.  An appropriate Order follows.

---

[5] I have not ruled on the admissibility of the Mr. Saueracker's alleged statements at trial.

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES CHIRDO,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 06-5523 |
| | : | |
| **MINERALS TECHNOLOGIES,** | : | |
| **INC. and SPECIALTY MINERALS,** | : | |
| **INC.,** | : | |
| Defendants | : | |

## <u>O R D E R</u>

**STENGEL, J.**

**AND NOW**, this 28th day of August, 2008, upon consideration of defendants' Motion for Summary Judgment, (Document #18), it is hereby **ORDERED** that the motion is **DENIED**.

**IT IS FURTHER ORDERED THAT**:

(1) A Final Pretrial Conference has been scheduled for **Tuesday, January 20, 2009, at 10:00 a.m.**, in Judge Stengel's Reading Chambers, 400 Washington Street, 2nd Floor, Reading, Pennsylvania.

(2) Jury selection will be held on **Monday, January 26, 2009, at 9:30 a.m.**, in Courtroom 3B, U.S. Federal Courthouse, 601 Market Street, Philadelphia, Pennsylvania.

(3) Trial will begin on **Tuesday, January 27, 2009**, in the Madison Building,

400 Washington Street, Reading, Pennsylvania.

BY THE COURT:


  /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.